LUTHER DAVIS,                              )
                                          )
        Petitioner/Appellant,             )        Appeal No.
                                          )        01-A-01-9610-CH-00494
VS.                                       )
                                          )        Wayne Chancery
JIM ROSE, Assistant Commissioner          )        No. 95-9638
of Correction; KEVIN MYERS, Warden;       )
and RUSTY HARVILLE, Disciplinary          )
Board Chairman,                           )
                                          )
        Respondents/Appellees.            )

FILED

February 28, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE JIM T. HAMILTON, JUDGE


LUTHER DAVIS #87045
CCA-SCCF
P. O. Box 279
Clifton, Tennessee  38425-0279
        Pro Se/Petitioner/Appellant

CHARLES W. BURSON
Attorney General and Reporter

ABIGAIL TURNER
Assistant Attorney General
2nd Floor, Cordell Hull Building
426 Fifth Avenue North
Nashville, Tennessee 37243
        Attorney for Respondent/Appellee Jim Rose

TOM ANDERSON
FRANKIE K. STANFILL
P. O. Box 900
Lexington, Tennessee 38351
        Attorneys for Respondents/Appellees
        Kevin Myers and Rusty Harville


                AFFIRMED AND REMANDED


                        BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.


                **O P I N I O N**

An inmate in a prison operated by Corrections Corporation of America was disciplined for allegedly stealing four sausage patties. He filed a petition for Writ of Certiorari with the chancery court, claiming that the disciplinary proceedings were defective for several reasons, including a delegation of disciplinary responsibilities to a private corporation, in violation of Tennessee law. The trial court dismissed the petition for untimeliness. We affirm the dismissal, but on the alternate ground of failure to state a claim upon which relief can be granted.

## I. The Facts

Luther Davis is a prisoner housed in the South Central Correctional Facility in Clifton Tennessee. He was at work in the prison kitchen on November 9, 1995, when a correctional officer on duty in the kitchen observed another inmate kitchen worker pass a dish cloth to Mr. Davis. The officer took possession of the cloth, and discovered four sausage patties wrapped inside it. The officer filed a disciplinary report charging both inmates with larceny. The report on Mr. Davis read as follows:

> At approx. 0725 on the morning of the above date and time, I C/O McClain noticed that I/M Davis 87045 had been passed a wash clothe (sic) wrapped over something. I C/O McClain asked I/M Davis to unwrap the object to find four sausage patties, therefore I am charging I/M Davis with larceny, recommend a job drop.

On November 14, 1995, a disciplinary panel composed of employees of the Corrections Corporation of America convened to hear the charge against Luther Davis. The reporting officer was not present at the hearing. Mr. Davis was represented by an inmate advisor, who requested that the report be dismissed because of its failure to allege facts sufficient to indicate that the sausage patties were indeed stolen.

Mr. Davis pled not guilty to the charge, but did not call any witnesses, and did not present any evidence in his defense. His advisor stated that the other inmate had given Mr. Davis the patties to hold while he went to the bathroom. The board found Mr. Davis guilty of larceny, and recommended that he be given ten days of punitive segregation, suspended for sixty days, "in an effort to deter future such behavior," and that he lose his job in the kitchen. Later that day, Department of Correction Liaison Sharon Warren reviewed the evidence and approved the recommendation and punishment.

On November 26, 1995 the prisoner filed a timely administrative appeal of the disciplinary board's decision. On January 5, 1996, Jim Rose, Assistant Commissioner of Correction, dismissed the appeal. Mr. Davis filed a Petition for Writ of Certiorari with the Chancery Court of Wayne County on January 25, 1996. The Chancery Court dismissed the petition, on the ground that it had been filed more than sixty days after the decision complained of, thus depriving the court of jurisdiction. See Tenn. Code Ann. § 27-9-102. *Fairhaven v. Tennessee Health Facilities Commission,* 566 S.W.2d 885 (Tenn.App.1976). This appeal followed.

## II. Timeliness

On appeal, Mr. Davis contends that the trial court erred by calculating the sixty days within which his petition had to be filed from a beginning date of November 14, 1995. He argues that his petition was timely, because although it was filed more than sixty days after Sharron Warren approved the panel's recommendation, it was filed less than sixty days after Mr. Rose dismissed his administrative appeal.

In *Jennings v. Traughber, et al.,* Appeal No. 01A01-9509-CH-00390 (Filed March 6, 1996), this court ruled for the first time that in actions involving the

Board of Paroles, the sixty day time limit for filing a Petition for Certiorari does not begin to run until the administrative appeals process has run its course, and the Board's decision accordingly becomes final. As the State points out in its brief, there has not yet been a case in which an equivalent rule has been announced for disciplinary proceedings. We find that this case does not require us to decide whether to extend the rule in *Jennings* to disciplinary proceedings, because it appears that it can be decided on other grounds.

### III. The Disciplinary Panel

Mr. Davis claimed in his petition that the disciplinary proceedings he was subjected to were illegal or arbitrary. Such an assertion comes under the purview of the Writ of Certiorari, which requires that an inferior tribunal send up the record for review, so that it can be determined if its actions were illegal, fraudulent or arbitrary, or in excess of its jurisdiction. While these categories overlap somewhat, they all stand for the principle that what is being challenged is not the intrinsic correctness of the lower court's decision, but some fundamental flaw in the manner in which that decision was reached. *Powell v. Parole Eligibility Review Board,* 879 S.W.2d 871 (1994); *Yokley v. State* 632 S.W.2d 123 (Tenn. App. 1981).

In the present case, the appellant argues that the disciplinary board's actions were illegal because the board had no legal authority to discipline prisoners, and because the board did not afford him the due process to which he was entitled. We will examine both of these contentions in turn.

Mr. Davis argues that the disciplinary board could not discipline him because Tennessee law specifically prohibits the delegation of the power to discipline prisoners to a private prison contractor. Tenn. Code Ann. § 41-24-110(5). In actuality,

our legislature has declared a whole range of correctional functions to be off-limits to private contractors. Tenn. Code Ann. § 41-24-110 reads in its entirety:

> **Powers and duties not delegable to contractor.--** No contract for correctional services shall authorize, allow or imply a delegation of the authority or responsibility of the commissioner to a prison contractor for any of the following:
>
> (1) Developing and implementing procedures for calculating inmate release and parole eligibility dates;
>
> (2) Developing and implementing procedures for calculating and awarding sentence credits;
>
> (3) Approving inmates for furlough and work release;
>
> (4) Approving the type of work inmates may perform, and the wages or sentence credits which may be given to inmates engaging in such work; and
>
> (5) Granting, denying or revoking sentence credits; placing an inmate under less restrictive custody or more restrictive custody; or taking any disciplinary actions [Acts 1986, ch. 932, § 10.]

While apparently approving the efficiencies that the use of private contractors can bring to prison management, our legislature has recognized that there are certain correctional functions that may not be appropriately transferred from public servants to officers or employees of a for-profit corporation.

It is undisputed that the three members of the panel that investigated Mr. Davis' case and recommended punishment were employees of Correction Corporation of America. However it appears that the actual power to impose disciplinary sanctions was retained by a designated employee of the Department of Correction, who reviewed the panel's proceedings, and approved its recommendation in accordance with the rules of the Department.

While the appellant argues that such an arrangement is nothing more than an evasion of the requirements of Tenn. Code Ann. § 41-24-110(5), we do not believe that is so. The Uniform Disciplinary Procedures promulgated by the Department of Correction requires the warden of each institution to appoint at least six institutional employees to serve as members of the disciplinary board. A panel of

three board members is appointed for each disciplinary hearing. The panel must include a ranking correctional officer and one employee each from two other job classifications in the institution.

The use of individuals who are familiar with the operation of the prison to conduct disciplinary inquiries appears to us to be consistent with the panel's fact-finding function. The requirement that the panel's findings be reviewed and approved by a designate of the Department of Correction is not only necessary for compliance with the statute, but when conscientiously applied, it also provides an important check on the fairness of the proceedings. The statute and the rules construed together enable the Department to retain the authority that it is forbidden to delegate, while allowing the private contractor to apply the experience and expertise of its employees to the problems of the prisons it manages.

## IV. Due Process

Mr. Davis next argues that he was deprived of due process because the allegations in the officer's report were insufficient to support a charge of larceny, because the reporting officer was not present at the hearing, and because his guilt was not proven by the preponderance of the evidence. The State has drawn our attention to a recent decision of the United States Supreme Court, *Sandin v. O'Connor*, ___ U.S. ___, 115 S.Ct. 2293, 132 L.Ed 418 (1995), in support of the proposition that Mr. Davis is not entitled to the protections of constitutional due process in the present case.

In *Sandin,* the Supreme Court examined the degree of procedural protection that must be afforded to inmates accused of infractions of prison disciplinary rules. The Court held that it is the nature of the punishment involved that determines whether the constitutional due process rights which normally attach when

a deprivation of liberty is threatened apply to disciplinary proceedings in prisons. Where the punishment threatened imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," then the prisoner may be entitled to the protections of due process. Where the punishment is "within the parameters of the sentence imposed by a court of law," constitutional due process rights are not implicated.

Mr. Sandin faced the possibility of confinement for thirty days in disciplinary segregation. The Court found that such a deprivation was within the range of confinement to be normally expected by one incarcerated in a state penitentiary, and that it therefore did not trigger the requirements of due process. We note that the proceedings in the present case involved only ten days of disciplinary segregation, and that the sentence was suspended. The recommendation of a job drop also did not trigger due process considerations, as it appears to us that the assignment of jobs is a discretionary function to be exercised by prison officials.

While we are persuaded by the *Sandin* case that Mr. Davis was not deprived of his constitutional rights, we do not believe that our inquiry must necessarily end there. Mr. Davis did not specifically premise his appeal on constitutional violations, but appears to rely on the procedural rules for disciplinary hearings, Index # 502.01 et seq., that were established by the Department of Correction, as part of its Administrative Policies and Procedures. Section V of those rules reads as follows:

> POLICY: Fair and impartial disciplinary proceedings will be administered against inmates charged with disciplinary infractions. . . . This policy is not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required. Minor deviations from the procedures set forth below shall not be grounds for dismissal of a disciplinary offense unless the inmate is able to show some prejudice as a result and the error would have affected the disposition of the case.

It appears to us that even though the above policy seeks to avoid endowing inmates with any additional rights, it obligates the Department of Correction and Corrections Corporation of America to substantially comply with its requirements. An indication of some of those requirements may be found in Section 5 of the rules, which cannot avoid using the word "rights" when listing what an inmate gives up when he pleads guilty to a disciplinary charge.

> c. The inmate will waive the following rights when signing this agreement:
>
> > (1) To personally appear before the disciplinary board
> >
> > (2) To plead not guilty and to have the case against him/her proven by a preponderance of the evidence presented
> >
> > (3) To present his/her own version of the facts
> >
> > (4) To call witnesses in his/her own behalf
> >
> > (5) To cross-examine his/her accuser and hostile witnesses
> >
> > (6) To appeal the decision of the disciplinary board and the punishment imposed by the board

Examining Mr. Davis's allegations in light of the requirements listed above, we find that the proceedings were deficient in some respects, but not to the degree that would render the chancery court in error in declining to grant him a Writ of Certiorari.

Perhaps the most serious deficiency was the absence of the reporting officer from the proceedings. However, there is no indication in the record that Mr. Davis asked for the reporting officer's presence, or that he requested a seven day continuance so that the officer's presence could be obtained, as he was entitled to do under the rules.

As for the disciplinary report, while it may have been deficient in failing to include details as to why the reporting officer believed he was witnessing a

larcenous exchange, that deficiency could have been cleared up by the reporting officer, had he been present.  There is no reason to believe that a prison disciplinary report written by a correctional officer is subject to a test of legal sufficiency similar to that required of an indictment drafted by a prosecuting attorney.

Finally, Mr. Davis was entitled to testify and to call witnesses on his behalf, but he declined to do either.  If he had done so, perhaps he could have presented evidence that would have preponderated against the admittedly scanty evidence against him.  He does not claim that the panel deprived him of the opportunity to defend himself, and he cannot blame the panel for the consequences of his decision not to take advantage of procedures created for his own protection.

**V.**

The decision of the trial court is affirmed for the reasons stated above. Remand this cause to the Chancery Court of Wayne County for further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE